United States Court of Appeals,

Fifth Circuit.

No. 93-5344.

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PENNSYLVANIA, Plaintiff-Appellant,

v.

CNA INSURANCE COMPANIES and Columbia Casualty Company, Defendants-Appellees.

Aug. 10, 1994.

Appeal from the United States District Court for the Eastern District of Texas.

Before GARWOOD and EMILIO M. GARZA, Circuit Judges, and HEAD,[*] District Judge.

EMILIO M. GARZA, Circuit Judge:

National Union Fire Insurance Company ("National Union"), an upper-level excess insurance carrier, brought an action against a lower-level excess insurance carrier, Columbia Casualty Company ("Columbia"), claiming that Columbia had breached either a direct or indirect duty to National Union to settle litigation brought against the mutual insured, Ariens Company ("Ariens").  On appeal, we must determine whether the district court erred in granting summary judgment in favor of Columbia.  Finding no error, we affirm.

I

The underlying facts are undisputed.  Ariens manufactured and sold motorized lawn and garden equipment, such as lawn mowers, snow

---

[*]District Judge of the Southern District of Texas, sitting by designation.

blowers, and stump grinders. A four-year-old boy was attempting to operate one of Ariens's riding rotary lawn mowers. The rotary blade got caught on a root. The boy got off the mower without killing the engine or disengaging the mower blade, and placed both his hands and arms under the mower in an attempt to free the blade. When the blade was freed, it amputated the boy's hands and one arm almost to the elbow.

The victim's parents (the "*Hines* plaintiffs") brought a products liability suit in state court against Ariens, claiming that the lawn mower's defective design caused the injuries described above. Apparently, later models of the insured's mowers were equipped with switches which killed the engine if the rider left the mower seat while the blade was engaged. The mower involved in this case did not have such a feature. Ariens defended liability on the ground that a riding lawn mower could not be made safe for use by a four-year old. Ariens also sued the *Hines* plaintiffs for indemnity, claiming that they were negligent in allowing the boy to operate the mower.

Ariens was self-insured up to $100,000 per occurrence, and $750,000 in the aggregate of all claims made in any one policy period. Beyond this self-insurance layer, Columbia provided the first and second levels of excess coverage, providing $1 million, less the insured's self-retained limits, and $5 million, respectively. National Union provided the outermost layer of $15 million of coverage, in excess of Columbia's second layer of

coverage.[1] The excess liability policy between Ariens and Columbia gave Columbia the "right to associate itself with the insured in the control, negotiation, investigation, defense or appeal of any claim." Special Endorsement 6 of the policy also deleted Columbia's "right to settle [any] claim or suit for an amount within the Insured's Retained Limit," without the consent of the insured. Ariens retained its own counsel. After a large verdict in favor of the *Hines* plaintiffs, Ariens settled the case for $7.5 million. The settlement exhausted Ariens's self-insured limits and the first two layers of excess coverage provided by Columbia, causing National Union to contribute approximately $2 million to the settlement.

National Union subsequently sued Columbia, claiming that Columbia breached either a direct or indirect duty to National Union by not negotiating a settlement with the *Hines* plaintiffs for an amount within the first two layers of excess coverage. As damages, National Union sought to recover the amount it had to contribute to the settlement of the underlying action. Columbia moved for summary judgment on the ground that it owed no legal duty

---

[1]"Excess liability insurers contract to provide inexpensive insurance with high policy limits by requiring the insured to contract for primary insurance with another carrier. The premium is also held down by the fact that the duty to defend rests primarily on the primary insurer...." *Harville v. Twin City Fire Ins. Co.,* 885 F.2d 276, 278-79 (5th Cir.1989) (footnote omitted). Here, Columbia contends that Ariens was both self-insurer *and* primary insurer, to the extent that Ariens contracted to retain control over defense of the claim, including the handling of settlement negotiations. Columbia and National Union, by the express terms of their respective policies with the insured, were both excess liability insurers.

3

to either Ariens or National Union to engage in settlement negotiations, since the excess coverage policy between it and the insured merely allowed, rather than required, that Columbia "associate itself with the insured in the control, negotiation, investigation, defense or appeal of any claim." The district court concluded that the terms of Special Endorsement 6 did not create a duty on behalf of Columbia toward Ariens to negotiate a settlement. The court further concluded that because Columbia owed no duty to Ariens, Columbia also owed no duty to National Union under the doctrine of equitable subrogation.[2] Based on these conclusions, the court granted summary judgment in favor of Columbia, from which National Union timely appealed.

## II

We review the district court's grant of a summary judgment motion de novo. *Davis v. Illinois Cent. R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991). Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes

---

[2]Equitable subrogation is the legal fiction through which a person who pays the debt for which another is primarily responsible is substituted, or subrogated, to all rights and remedies of the other. Black's Law Dictionary 539 (6th ed. 1990). In Texas, an excess insurer may bring an equitable subrogation action against a primary insurer—i.e., an action that the insured may have against the primary insurer for mishandling a claim. *See American Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480, 482-83 (Tex.1992).

4

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25, 106 S.Ct. at 2553-54. While we must "review the facts drawing all inferences most favorable to the party opposing the motion," *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986), that party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

National Union first contends that the district court erred in construing the terms of the excess insurance policy between Columbia and Ariens as not requiring that Columbia negotiate a settlement within the first two layers of excess liability coverage. "In construing a written contract [such as an insurance policy], the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).[3] When the terms of an insurance policy are plain, definite, and unambiguous, a court may

_____

[3]Because the laws of the various states involved in this diversity suit do not conflict on any material issue, we apply Texas substantive law. *See W.R. Grace & Co. v. Continental Casualty Co.,* 896 F.2d 865, 874 (5th Cir.1990) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary."). Even if some material conflict did exist, our application of Texas law renders moot National Union's argument that Texas law should apply.

5

not vary those terms. *Royal Indemnity Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965); *see also Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987) (stating that "if the insurance contract is expressed in plain and unambiguous language, a court cannot resort to the various rules of construction [favoring the insured]"). An insurance policy is ambiguous only when it is "reasonably susceptible to more than one meaning ... but if only one reasonable meaning clearly emerges[,] it is not ambiguous." *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). When no ambiguity exists, a court must give the words used their plain meaning. *Puckett v. United States Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984).

Special Endorsement 6 of the excess insurance policy provides in pertinent part:

> The [insurance] company, at its own expense, shall have [the] right to associate itself with the insured in the control, negotiation, investigation, defense or appeal of any claim or proceeding which, in the opinion of the company is or may be covered by this policy. The insured shall fully cooperate in all matters pertaining to such claim or proceeding....

> The rejection of a negotiated settlement for a definite amount by the insured with respect to a claim shall limit the company's liability to the total amount of the settlement negotiated and defense costs and excess defense costs incurred to the date of such negotiated settlement agreement for such claim less the self-insured retention.

Special Endorsement 6 also expressly deleted condition 3(d) from the insurance policy, which formerly read:

> The [insurance] [c]ompany at its sole option and without the consent of the insured, may settle any claim or suit involving the limits of liability of this policy or likely to involve its limits. The [c]ompany expressly reserves the right to settle such claim or suit for an amount within the Insured's Retained Limit.

We read this unambiguous language to mean that Columbia had the *right,* and not the *duty* to engage in settlement negotiations. Indeed, the explicit abrogation of Columbia's unilateral authority to negotiate a binding settlement supports the interpretation that the parties intended for Ariens to control its own defense, including the handling of settlement negotiations. *See also Inst. of London Underwriters v. First Horizon,* 972 F.2d 125, 126 (5th Cir.1992) (interpreting similar language under Louisiana law—"[the excess carrier] shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers or both in the defense and control of any claim...."—as unambiguously excluding a defense *obligation* on behalf of an excess carrier). Based on the policy's plain and unambiguous language, we hold, as the district court did, that Columbia had no duty to Ariens to settle for an amount within the first two layers of excess liability coverage.[4] Because Columbia had no duty to Ariens, Columbia also had no duty to National Union under the doctrine of equitable subrogation. *See American Centennial,* 843 S.W.2d 480, 482-83 (Tex.1992) (noting that the doctrine permits the excess insurer to step into the shoes of the insured when pursuing a cause of action for mishandling of a

---

[4]We do recognize that the policy did impose the duty upon Columbia to "cooperate in all matters pertaining [a] claim or proceeding [in defense of litigation]." Given the undisputed fact that Columbia never objected to any settlement Ariens wanted to make, we hold as a matter of law that Columbia did not violate its duty to cooperate. *See* Record on Appeal vol. 2, at 781 (deposition of J. Michael Myers, counsel for Ariens) (stating that prior to the verdict coming in, Columbia had never refused to consent to an amount for which his client desired to settle).

claim).[5]

National Union also contends that it raised a material issue of fact regarding whether Columbia actually controlled the defense of the litigation against Ariens, thereby triggering a duty on behalf of Columbia to settle and/or defend the claim in a reasonable and careful manner. This argument fails to persuade for at least two reasons. First, the terms of the policy unambiguously reserves control of the defense to Ariens, and not Columbia. Thus, as a matter of law, Columbia could not have controlled the defense of the claim. Second, the summary judgment evidence which National Union cites in its brief demonstrates at most that Columbia's adjuster participated in settlement negotiations with the *Hines* plaintiffs. We have held as a matter of law that where the insured has retained independent counsel, an insurer's participation in settlement negotiations does not itself constitute an assumption of the insured's defense. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 445-46 (5th Cir.1991). We

---

[5]Although some jurisdictions have recognized a direct duty running from the primary to the excess insurer, Texas has yet to recognize such a duty. *See American Centennial,* 843 S.W.2d at 483 ("[W]e decline at this time to permit a direct action."). Even if Texas did recognize a duty running from a lower-level excess insurer to an upper-level excess insurer, to settle a claim within the lower-level coverage limits, the terms of the policy gave the Ariens, and not Columbia, the authority to control the defense of litigation, including settlement negotiations. Lacking such control, Columbia could not have possessed a duty to settle within the lower-level coverage limits. *See Certain Underwriters v. Fidelity and Casualty Ins. Co.,* 789 F.Supp. 927, 934 (N.D.Ill.1992) ("As a matter of law the primary insurer cannot have a direct duty to the excess insurer to do that which the primary insurer has no authority to do."), *rev'd on other grounds,* 4 F.3d 541 (7th Cir.1993).

therefore reject Columbia's second contention on appeal.[6]

                                    III

    For the foregoing reasons, we AFFIRM the judgment of the district court.

_____

[6]Because we conclude that Columbia violated no duty to National Union, we further note that the district court correctly granted summary judgment on National Union's claims under the Texas Deceptive Trade Practices Act and Insurance Code which were premised on Columbia's allegedly negligent conduct in failing to settle the litigation. *See* Brief for National Union at 35 ("The same evidence which constitutes negligence on the part of CNA also constitutes evidence of an unconscionable course of conduct which would violate both the DTPA and Art. 21.21, Insurance Code of Texas.").