United States Court of Appeals,

Fifth Circuit.

No. 93-2841.

David ASKANASE, Trustee, Plaintiff-Appellant,

v.

LIVINGWELL, INC., et al., Defendants,

Peter M. Magee, et al., Intervenors-Defendants-Appellees,

and

Tom J. Fatjo, Jr., Intervenor-Defendant-Appellee.

Feb. 20, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES and STEWART, Circuit Judges, and DUPLANTIER,[*] District Judge.

PER CURIAM:

David Askanase, as trustee for the bankruptcy estate of LivingWell, Inc., seeks to terminate the LivingWell, Inc. Directors and Officers Liability Insurance Trust and to have the funds in the trust turned over to the bankruptcy estate as property of the estate. The district judge interpreted the trust instrument as prohibiting the termination of the trust under the particular circumstances. The trustee appeals this adverse judgment. Because we disagree with the district court's interpretation of the trust instrument, we reverse the district court's judgment, direct it to enter partial judgment in favor of the bankruptcy trustee, and remand for further proceedings.

LivingWell owned and operated physical fitness facilities throughout much of the nation. The corporation, pursuant to a resolution of its board of directors, created the liability insurance trust in 1987 to indemnify its officers and directors from liability and legal expenses arising out of their positions with the corporation. By September, 1989, the corporation had funded the trust with unencumbered cash in the amount of $1,000,000.

On October 27, 1989, LivingWell filed for bankruptcy under Chapter 11 of the Bankruptcy

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

Code.  On October 5, 1990, the proceeding was converted into a Chapter 7 liquidation, and Askanase

was appointed trustee of the bankruptcy estate.

The pertinent provisions of the trust agreement before the amendment at issue are as follows:

ARTICLE VII

RIGHT TO AMEND AND TERMINATE

*Section 7.1. Amendment.*  Changes to this Trust Agreement may be made at any time
or from time to time by the Company by resolution of its Board of Directors, and provided
that in no case shall an amendment affect the rights, duties or responsibilities of the Trustee
or the Administrator without its consent.[1]

*Section 7.2. Termination.*  Subject to the following provisions of this Section 7.2, this
Trust may be terminated at any time by the Company by action of its Board of Directors....

\* \* \* \* \* \*

No termination of this Trust or the insurance coverage provided by the trust shall be effective
until at least 36 months after the date on which the resolution of the Board of Directors of the
Company authorizing such termination is adopted.

On November 29, 1990, Askanase, as the bankruptcy trustee, executed a "notice of termination" of

the trust pursuant to Section 7.2 of the trust agreement as it then read.

On August 13, 1991, Askanase, as the bankruptcy trustee, amended Section 7.2 of the trust

agreement so as to provide that termination of the trust by the bankruptcy trustee would be effective

immediately.[2]  The amendment also deleted the requirement that the trustee of the trust "shall obtain

for an on behalf of the Company, if reasonably available but only to the extent of the remaining assets

of the trust fund ... extended discovery period coverage covering any "tail liability' of the Company

beyond the effective date of any such termination."  Immediately after adopting the amendment to

section 7.2, Askanase executed an instrument terminating the amended trust.

On October 25, 1991, Askanase, on behalf of the bankruptcy estate, filed a separate lawsuit

---

[1]This is the only restriction on amendment of the trust.  It has no impact upon the issues on
appeal in this case, because the amendment at issue had no effect upon the Trustee or the
Administrator.

[2]The pertinent part of the amended provision is as follows:  "No termination of this Trust ...
shall be effective until at least 36 months after the date on which the resolution of the Board of
Directors of the Company authorizing such termination is adopted.  Notwithstanding the
foregoing, should this Trust ... be terminated by its Court appointed Trustee in bankruptcy, the
termination shall be effective immediately."  (underlined language was added by the amendment).

("related suit") against many of the former officers and directors of LivingWell, which asserted various claims of a type which the insurance trust fund was designed to cover. Many of these officers and directors intervened in the instant action and filed counterclaims asserting a right as beneficiaries of the trust to have their claims for indemnity and legal expenses arising out of the related suit satisfied before the corpus of the trust would be turned over to the bankruptcy estate.

The parties filed cross-motions for summary judgment. Askanase sought a judgment directing that the remaining corpus of the trust be turned over to the bankruptcy estate and that the intervenors take nothing from the corpus because they had submitted their notice of claims for reimbursement of legal fees and expenses arising out of the related suit after the trust was terminated on August 13, 1991. In their motions for summary judgment, the intervenors sought reimbursement for their legal costs and expenses incurred in the defense of the related suit before the funds are turned over to the bankruptcy estate; they contend that they are beneficiaries with valid claims, because they provided the trust with notice of their claims during the thirty-six month "winding up" period which followed the initial notice of termination. They contend that the amendment and second termination had no effect, because the trust could not be amended after the initial notice of termination.

The district court concluded that Askanase lacked the authority to amend and then terminate the trust on August 13, 1991, because he had already terminated the trust by executing the initial "notice of termination" on November 29, 1990. The district court ordered Askanase to hold the corpus of the trust in a "trust created in law and in equity" unless Askanase shows in related litigation that some or all of the payments of corporate funds into the trust should be avoided as fraudulent conveyances or insider preference payments. The district court also declared that the trust agreement shall establish the rights and remedies of the parties, subject to Askanase's attempt to avoid the corporate payments to the trust. The district court dismissed the intervenors' claims without prejudice to reasserting them in other related litigation.

Askanase contends that he retained the power to amend the trust after he gave the required thirty-six month notice of termination in November 1990, that the August 13, 1991 amendment and termination of the trust were effective, and that the corpus of the trust should be turned over to the

bankruptcy estate unfettered by any claims of the former beneficiaries.

Construction of the Trust Agreement

In interpreting a trust, "resort is had in the first place to the instrument, if any, under which the trust is created. As to any matter expressly covered by the instrument, the provisions of the instrument, if unambiguous, determine the terms of the trust." IIA Scott on Trusts § 164.1 at 253 (4th ed. 1987). Therefore, just as we must interpret a contract strictly and accord its words their literal, ordinary meaning, *Olsen v. Shell Oil Co.,* 595 F.2d 1099, 1104 (5th Cir.1979), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979), we must enforce clear, unambiguous provisions of a trust agreement as they were written.

The bankruptcy estate succeeds to "all legal or equitable interests of the debtor in property as of the commencement of the case," including those powers that the debtor may exercise for its own benefit. 11 U.S.C. § 541(a)(1), (b)(1). Any interest which a debtor retains in a trust is property of the estate, including the power to amend the trust and the power to revoke a revocable trust and recover the remaining funds in the trust for the benefit of the creditors. *In re Gifford,* 93 B.R. 636, 640 (Bankr.N.D.Ind.1988). "Thus, what comes to the bankruptcy estate is not only the property in which debtor has an interest, but also, the powers the debtor can exercise for its own benefit over property regardless of the title debtor may be acting under." *Id.*

LivingWell, Inc. had both a reversionary interest in the trust, because pursuant to the trust agreement any funds remaining in the trust after termination are to be returned to the corporation, and a present interest in the trust, because it had the power to amend or termi nate the trust. The bankruptcy estate of LivingWell succeeded to any rights or interests of LivingWell under the trust agreement, and Askanase as trustee assumed the power to terminate or amend the trust.[3]

The November 29, 1990 notice of termination did not terminate the trust as of that date

---

[3]The intervenors-appellees mistakenly rely upon *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391 (5th Cir.1987) for their contention that the corpus of the trust was not property of the estate. *In re Louisiana World Exposition* concerned the ownership of the proceeds of a third party insurance policy in which the debtor corporation did not have a reversionary interest. *Id.* at 1399. In contrast, the case at issue involves ownership of the corpus of a revocable trust whose trust agreement states that any trust assets remaining after termination are to be distributed to the debtor corporation.

because, according to the clear and unambiguous then terms of the trust agreement, the notice was not effective for at least thirty-six months. Because the trust was not yet terminated, the trust agreement was still in force; therefore, Askanase, as the successor to the bankrupt corporation's interest in the trust, had the authority to amend and then terminate the trust on August 13, 1991. The intervenors-appellees contend that the amendment was without effect because the termination of the trust by the November 29, 1990 notice of termination began a winding up period in which an amendment to the trust was not authorized. This argument overlooks the unambiguous provision in the trust instrument that the earlier termination was not "effective" for thirty-six months; therefore, it had no effect as of the date of the second amendment and the immediately effective termination.

The amendment provision in the trust agreement is also an unambiguous and clear manifestation of the settlor's intention; it gave the corporation a nearly unlimited power of amendment. Section 7.1 of that trust agreement provided that:

> [c]hanges to this Trust Agreement may be made at any time or from time to time by the Company by resolution of its Board of Directors, and provided that in no case shall an amendment affect the rights, duties or responsibilities of the Trustee or the Administrator without its consent.

The board of directors expressly reserved the right to amend the trust agreement without restriction, as long as an amendment did not affect the rights, duties, or responsibilities of the Trustee or the Administrator without its consent. *See* Restatement (Second) of Trusts § 331 (1959) ("The settlor has power to modify the trust if and to the extent that by the terms of the trust he reserved such a power."). Such power to amend "at any time or from time to time" includes the power to amend the termination provision. *Sexton v. United States,* 300 F.2d 490, 492 (7th Cir.1962), *cert. denied,* 371 U.S. 820, 83 S.Ct. 36, 9 L.Ed.2d 60 (1962). Because the board of directors chose not to restrict the right of LivingWell, Inc. to amend the termination provision, the former board members cannot complain that the bankruptcy trustee, who succeeded to the rights of the board of directors of the corporation, chose to exercise that power to amend "at any time" by modifying the termination provision.

Just as we cannot read into a contract that which is not there, *Southwest E & T Suppliers, Inc. v. American Enka Corp.,* 463 F.2d 1165, 1166 (5th Cir.1972), we cannot read into this trust

agreement a restriction on amendment that is not in the terms of the trust. The fact that the amendment provision contains a restriction on amendment not involved in this case further supports the conclusion that the settlor intended that the trust be otherwise freely amendable.

The August 13, 1991 amendment to the trust agreement deleted the requirement that the trust use its remaining funds to obtain "extended discovery period coverage covering any "tail liability' " and added the following underlined language to the termination provision:

> No termination of this Trust ... shall be effective until at least 36 months after the date on which the resolution of the Board of Directors of the Company authorizing such termination is adopted. <u>Notwithstanding the foregoing, should this Trust ... be terminated by its Court appointed Trustee in bankruptcy, the termination shall be effective immediately.</u>"

(underlined language was added by the amendment). On the same day, the bankruptcy trustee then exercised his power, as successor to the company's board of directors, to terminate the trust, effective immediately, pursuant to its amended termination provision.

The terms of the original and amended termination provision provide that "[a]ny amounts held by the Trustee as Trust Fund assets upon the effective date of such termination ... shall be distributed to the Company within 30 days thereafter." Of course, no such distribution "to the Company" can take place until all valid claims against the trust have been paid. The district court did not consider whether there are any valid claims (including the intervenors' claims)[4] against the corpus of the trust, notwithstanding its termination on August 13, 1991; the district court must do so upon remand. We do not imply that there are any such claims, nor do we imply that such claims may be valid against claims or defenses that may be asserted by the trustee, Askanase. After all valid claims have been paid, the remaining corpus of the trust must be turned over to the bankruptcy estate, which succeeded to LivingWell's interest in the trust.

The district court's judgment is REVERSED and the case is REMANDED with instructions to enter a judgment declaring the trust terminated effective August 13, 1991, and ordering the turnover to the bankruptcy estate of the proceeds of the trust remaining after payment of all claims

---

[4]Because LivingWell's by-laws provided for indemnification (independent of the insurance trust) of officers and directors to the maximum extent permissible under the laws of Delaware, claims for indemnification of the former officers or directors not covered by the trust as terminated on August 13, 1991, can be pursued as claims against the bankruptcy estate.

against the trust determined to be valid notwithstanding its termination on that date.