**In re David PORRAS a/k/a I. David Porras, Debtor.**

**Randolph N. OSHEROW, Chapter 7 Trustee, Plaintiff,**

**v.**

**David PORRAS and William Edmiston, Trustee of the Lucille Christie Blakley Trust, and William Edmiston, Trustee of the Lucille Christie Blakley Support Trust, Defendants.**

**Bankruptcy No. 95–30583–LK.**
**Adversary No. 97–3061–LK.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

Jan. 9, 1998.

Amended Order June 9, 1998.

---

Michael M. Parker, Fulbright & Jaworski, L.L.P., San Antonio, TX, for Randolph N. Osherow, Chapter 7 trustee.

Gregg D. Stevens, Dallas, TX, for U.S. (IRS).

Ben L. Krage, Dallas, TX, for David Porras.

Timothy A. Duffy, Dallas, TX, for William H. Edmiston.

## MEMORANDUM OPINION REGARDING RANDOLPH N. OSHEROW, TRUSTEE, AND THE UNITED STATES OF AMERICA'S FIRST JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

LARRY E. KELLY, Chief Judge.

On October 29, 1997, the court held a hearing on the Joint Motion for Partial Summary Judgment filed by Randolph N. Osherow, Chapter 7 Trustee and the United States of America in the above-styled and numbered adversary proceeding. At the conclusion of the hearing the court took the matter under advisement for further review and research. The court has determined that the Motion for Partial Summary Judgment should be granted. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O).

### Factual Background

David Porras filed his bankruptcy petition under Chapter 7 of the Bankruptcy Code on May 3, 1995. Andrew Krafsur was appointed as Chapter 7 trustee in the case, later to be replaced by Randolph N. Osherow. On May 2, 1997, Randolph Osherow filed a Complaint Seeking Declaratory and Injunctive Relief and Seeking to Avoid and Recover Fraudulent Transfers, Adversary No. 97–3061. The Complaint requests that the court declare that Porras' interests in two trusts are property of the bankruptcy estate of Porras and subject to administration by Osherow. The Complaint also requests injunctive relief to protect the assets of the trusts and requests the avoidance of purported fraudulent transfers of property into the trusts. This Motion for Partial Summary Judgment seeks to bring the assets of one of the trusts, the Lucille Christie Blakley Support Trust (the support trust), into the bankruptcy estate, alleging alternate theories: (1) the trust was previously revoked and (2) the trust is self-settled and creditors may therefore reach the settlor's interest in the trust.

### Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish an element necessary to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying the portions of the court record which demonstrate the absence of a genuine issue of material fact. *Celotex,* at 317, 106 S.Ct. at 2553. Once the movant carries its burden, the responsibility shifts to the non-movant to show the court that summary judgment is not proper. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. CNA Insurance Companies,* 28 F.3d 29 (5th Cir.1994) In consideration of a motion for summary judgment, the court must review the facts drawing all inferences most favorable to the party opposing the motion, but that party cannot rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of genuine fact issues for trial. *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)

### Revocation of the Trust

The existence of the support trust was discovered during prior litigation between Lucille Christie Blakley, the mother of the Debtor, and the Internal Revenue Service. The Internal Revenue Service turned over the support trust instrument to Andrew Krafsur, who was the Chapter 7 trustee of Porras' bankruptcy estate at the time. In a letter dated August 3, 1995, Krafsur revoked the support trust and declared all property in the trust to be property of Porras' bankruptcy estate.

The support trust was established on May 9, 1983. Pursuant to paragraph V of the trust,

This trust shall be irrevocable until ten years after the transfer of the trust estate to the Trustee. Thereafter, by written instrument filed with the Trustee, the Settlor may revoke this trust in whole or in part, and in like manner may, after the expiration of such ten year period, alter or divest the interests or [sic] or change beneficiaries, and, with the written consent of the Trustee, may amend this trust without limitation in any other respect, and may cancel or amend any such amendment.

■ Pursuant to this provision, Krafsur sent William Edmiston, Trustee of the support trust, a letter revoking the support trust. Krafsur based his revocation on the holding of a Fifth Circuit case, *Askanase v. LivingWell, Inc.*, 45 F.3d 103 (5th Cir.1995) In *Askanase*, the Fifth Circuit found that "any interest which a debtor retains in a trust is property of the estate, including the power to amend the trust and the power to revoke a revocable trust and recover the remaining funds in the trust for the benefit of the creditors." *Askanase*, 45 F.3d at 106. Thus, the bankruptcy estate, as represented by the bankruptcy trustee, gains not only the property interest but may also exercise any powers which the debtor could exercise for his benefit over the property.

■ Edmiston advanced two arguments against Krafsur's revocation of the support trust. He argued first that the revocation could not be accomplished without his consent, relying on language in the trust instrument. The court disagrees. It reads the language of the trust document as requiring the Trustee's consent only for an amendment of the trust. It appears that revocation may be accomplished unilaterally by the filing of a written instrument with the Trustee, which is what Krafsur did. The attempt to revoke was proper as to form.

■ Edmiston's next argument was based on a "letter" from David Porras, which purports to extend the irrevocability period of the trust for an additional ten year period. The "letter" from Porras was dated February 4, 1993 and requests approval of Edmiston to amend the trust to extend the irrevocability period. Edmiston signifies his approval by signature dated February 8, 1993. If this letter was effective to amend the trust and extend irrevocability until the year 2003, then, Edmiston argued, Krafsur did not have the power to revoke the trust in August of 1995.

Edmiston and Porras have only produced a copy of this letter during discovery and for this summary judgment proceeding. Despite several requests by the Trustee, Edmiston and Porras have not been able to produce the original and have not satisfactorily explained to the court their inability to produce an original for this adversary proceeding, nor why such a document was not produced and this argument advanced when the Trustee initially sought to revoke the trust.

■ "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." FED.R.EVID. 1002. "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." FED.R.EVID. 1003. The best evidence rule is designed to assist in the search for the truth. The rule originated in the Middle Ages when the document itself was considered to be the right the party was attempting to assert, and was therefore strictly required. Exceptions developed as courts accepted secondary evidence to prove the contents of the writing, realizing the harsh consequences which sometimes resulted from loss of the original document. As technology has developed, diminishing the probability of error or fraud in the copying process, secondary evidence is judged to be more accurate and courts have developed a flexible approach to application of the best evidence rule.

Weinstein's Federal Evidence treatise provides the reasons supporting the best evidence rule:

1. Secondary evidence, whether parol testimony or copies, is susceptible to both human and mechanical error. The rule, therefore, enhances the probability of accuracy.

2. The rule promotes the prevention of fraud because it allows the parties to examine documents for any defects or alterations, and it dampens any desire to color testimony as to the contents of documents, since any testimony is subject to immediate corroboration.

3. The appearance of the original may furnish information as to its authenticity and significance that may be lacking in a copy.

6 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 1002.03 (2d ed.1997)

 Doubts should be resolved in favor of admissibility; however, courts settle issues concerning authenticity on a case-by-case basis. "Under [Federal Evidence] Rule 1008, a judge has broad discretion in deciding whether the opposing party has actually raised a legitimate issue regarding the accuracy of a duplicate under Rule 1003." WEINSTEIN at § 1003.02. Where there is a possibility of fraud in the circumstances surrounding the execution of a writing, the reliability of the duplicate is impaired and the court may insist on the original if the opponent demands it. WEINSTEIN at § 1003.03 The court finds these circumstances to exist in this case. Porras and Edmiston have failed to produce the original or satisfactorily explain the loss of the original. In prior hearings before this court, the Debtor's and Mr. Edmiston's credibility have continually been challenged. Notwithstanding that, this "letter" suddenly appears with no explanation as to why it has not appeared previously and no explanation as to why the original is not produced. This court finds that no grounds have been advanced to admit the duplicate letter from Porras as evidence in this proceeding and therefore, no credible fact issue is raised to refute the clear evidence that the trust was earlier, and properly revoked.

Therefore, Krafsur's letter revoking the trust is and was effective and the property under the trust should be turned over to the bankruptcy estate, after payment of valid claims against the trust property.

*Was the Trust Self–Settled?*

Paragraph IV of the trust instrument is entitled *"Spendthrift Provision"* and provides that "[t]he interest of beneficiaries and principal or income shall not be subject to the claims of their creditors or others nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered." Bankruptcy Code Section 541(c)(2) excludes "spendthrift trusts" from property of the bankruptcy estate if such a trust protects the beneficiary from creditors under applicable state law. "In general, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors." *In re Shurley,* 115 F.3d 333 (5th Cir.1997) citing *In re Moody,* 837 F.2d 719, 723 (5th Cir.1988). An exception exists if the settlor makes himself a beneficiary.

1. *Is Porras the settlor?*

The "settlor" is "the person who creates the trust." TEX. TRUST CODE ANN. § 111.004 (Vernon 1995) The support trust instrument names I. David Porras as the "Settlor" of the support trust, the person who "conveyed, transferred and assigned" the assets which constitute the trust estate. This court declines to look beyond the declarations made in the trust instrument, despite statements made by Edmiston as to conflicting ownership claims to the trust property. Absolutely no attempt was made to show any factual basis for such assertion and it contravenes the plain language of the instrument. The court's finding that David Porras is the settlor of the trust does not foreclose Mrs. Blakley's potential claim against the trust estate, if valid, for contribution or improvements.

2. *Is Porras a beneficiary?*

Pursuant to Paragraph I of the trust instrument, Lucille Christie Blakley receives only the net income from the trust property, to be distributed on a quarterly basis. Upon her death, the corpus of the trust "shall be distributed to the Settlor, if living, otherwise to his estate." David Porras is a remainder beneficiary pursuant to the explicit terms of the trust. A beneficiary is "a person for whose benefit property is held in trust, re-

gardless of the nature of the interest" and "includes a person who has any present or future interest, vested or contingent ..." TEX. TRUST CODE ANN. § 111.004 (Vernon 1995); BLACK'S LAW DICTIONARY 157 (6th ed. 1990) Edmiston argues that since he can invade the corpus of the trust to benefit Blakley in the event of an emergency, Porras has no absolute right to any remainder. The court sees this simply as a valuation issue. Porras has an interest under the trust—(1) a remainder in the principal of the trust, (2) the right to revoke the trust, (3) the right to amend the trust and (4) the right to alter or divest the interests of or change beneficiaries. He is therefore a beneficiary, regardless of the value of his interest.

### 3. The consequence of self-settlement

Texas law is clear that "[w]here a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest." RESTATEMENT (SECOND) OF TRUSTS § 156 (1957). "If the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest does not prevent his creditors from satisfying claims from his interest in the trust estate." TEX. TRUST CODE ANN. § 112.035 (Vernon 1995)

As the Circuit court stated in *Shurley*, "a debtor should not be able to escape claims of his creditors by himself setting up a spendthrift trust and naming himself as beneficiary." *Shurley*, 115 F.3d at 337. Mrs. Shurley was one of the settlors of the trust and one of the beneficiaries. The creditors, through the Chapter 7 trustee of her bankruptcy estate, were able to reach property which she contributed to the spendthrift trust.

There appears to be no material fact in dispute relating to the self-settlement of the Lucille Christie Blakley Support Trust by David Porras. The court finds the spendthrift provision of the trust to be ineffective against creditors of David Porras and therefore, against the Chapter 7 trustee of this bankruptcy estate. Randolph Osherow may reach David Porras' interest in the trust estate. However, pursuant to the court's

ruling that the trust has been revoked, the trustee can reach all assets remaining in the trust, subject to valid claims against trust assets, except that any accumulated and undistributed income on hand at the date this trust became revocable shall be distributed to Lucille Christie Blakley, pursuant to Paragraph I of the trust document.

### Conclusion

The August 3, 1995 letter from Andrew Krafsur to William Edmiston was effective to revoke the trust and the trust property should be turnover over to the bankruptcy estate, after payment of valid claims. Furthermore, the court finds that the trust was self-settled by David Porras, leaving his creditors and the bankruptcy trustee the ability to reach his interest in the support trust. By order entered separately, the court grants the Joint Motion for Partial Summary Judgment and directs the turnover to the bankruptcy estate of the net proceeds of the trust.

A conference will be held on the **28th** day of **January, 1998 at 9:00 a.m.** in the United States Bankruptcy Court, Western District of Texas, El Paso Division at which time the parties shall be prepared to discuss what issues remain to be tried in this adversary proceeding, if any. An amended scheduling order shall issue at that time.

### AMENDED ORDER GRANTING RANDOLPH N. OSHEROW, TRUSTEE'S, AND THE UNITED STATES OF AMERICA'S FIRST JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

On October 29, 1997, the Court held a hearing on the Joint Motion for Partial Summary Judgment filed by Randolph N. Osherow, Chapter 7 Trustee, and the United States of America ("Motion for Partial Summary Judgment") and all responses thereto in the above styled and numbered adversary proceeding. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E) and (O). After further review and research, the Court finds that David Porras and William Edmiston, Trustee of the Lucille Christie Blakley Support Trust have failed to present any credible or admissible evidence

which would create a genuine issue of material fact with regard to the Motion for Partial Summary Judgment and, therefore, Randolph Osherow, Chapter 7 Trustee and the United States are entitled to the partial summary judgment requested as a matter of law. The Court further finds that Andrew Krafsur revoked the Lucille Christie Blakley Support Trust ("Support Trust") on August 3, 1995, causing the ownership of all the assets of the Support Trust to be vested in the bankruptcy estate of David Porras. The Court further finds that David Porras was the sole settlor of the Support Trust and a beneficiary of the Support Trust, so as to defeat any spendthrift protection provided in the Support Trust. Therefore, the Court concludes that the Motion for Partial Summary Judgment should be granted. It is therefore

ORDERED that the Joint Motion for Partial Summary Judgment is hereby granted and, accordingly, all property, real and personal, tangible and intangible belonging to the Support Trust on August 3, 1995 is hereby declared to be property of Porras' bankruptcy estate.