588 So.2d 1009 (1991)
COLONIA INSURANCE COMPANY, Appellant,
v.
ASSURANCEFORENINGEN SKULD, Appellee.
Nos. 90-2654, 90-2232 and 90-997.
District Court of Appeal of Florida, Third District.
October 8, 1991.
Rehearing Denied December 12, 1991.
*1010 Stephens Lynn Klein & McNicholas, and Philip D. Parrish, Miami, for appellant.
Anderson Livingston Kubit & Mase, and Beverly Eisenstadt, Miami, for appellee.
Before SCHWARTZ, C.J., and NESBITT and COPE, JJ.
SCHWARTZ, Chief Judge.
The plaintiff-appellant Colonia Insurance Company held liability insurance covering Poseidon Services Ltd., a ship operator which does business in Miami. Poseidon was also insured by the appellee Assuranceforeningen Skuld (Skuld), a mutual indemnity association based in Oslo, Norway. When a wrongful death action was brought against Poseidon in Dade County and Skuld denied coverage, Colonia was required to defend and settle the action itself. Contending that it was only an excess carrier, Colonia sued Skuld as the alleged primary insurer to recover the costs of defense and the amount of the settlement. The trial judge dismissed the case on the ground that a forum selection clause contained in the insurance contract between Poseidon and Skuld required that the action be maintained in Oslo. We reverse because the clause in question does not apply to the present controversy.
The insurance agreement between Skuld and its "member," Poseidon, provides on the point in issue:
Venue in Litigation:
An action in a dispute between the Association and a Member shall be brought, in so far as Danish Members are concerned, in the So- og Handelsretten at Copenhagen, as regards Finnish Members in the Radstuvuratten at Helsingfors, as regards Swedish Members in the Stockholm Radhusratt. For other Members [including Poseidon] actions shall be brought in the Oslo Byrett [City Court]... . .
There is no doubt of the enforceability of this provision as to actions within its scope. See Carnival Cruise Lines, Inc. v. Shute, ___ U.S. ___, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); Manrique v. Fabbri, 493 So.2d 437 (Fla. 1986). This case, however, is not one of them, simply because it is not "a dispute between the [a]ssociation (Skuld) and a [m]ember [Poseidon]," but one only between Skuld and Colonia. The clause is therefore a legal irrelevancy.
It is clear that a direct action, like this one, lies on behalf of an alleged excess carrier against a putative primary carrier which has wrongfully refused to undertake its duties on behalf of the insured. E.g., General Accident Fire & Life Assurance Corp., Ltd. v. American Casualty Co., 390 So.2d 761, 765 (Fla. 3d DCA 1980), review denied, 399 So.2d 1142 (Fla. 1981); American *1011 Home Assurance Co. v. City of OpaLocka, 368 So.2d 416, 420 (Fla. 3d DCA 1979); see also Rebozo v. Royal Indemnity Co., 369 So.2d 644, 646 (Fla. 3d DCA 1979), cert. denied, 379 So.2d 209 (Fla. 1979); 10 A.L.R. 4th 880, 881-82 (1981); 4 Corbin on Contracts § 892, at 585 (1951).
The appellee argues that the essential nature of such an action is one of equitable subrogation in which, under the familiar formulation, the subrogee, Colonia, "stands in the shoes" of the subrogor, Poseidon. Skuld is quite right in its statement of these rules as abstract propositions. The problem, however, is the one so often encountered when one attempts to employ broad catch phrases to solve a narrow legal problem. We are not faced with a grand issue of jurisprudential theory, only a simple one of contract interpretation. On that basis, the claim that, because an action by Poseidon against Skuld would be governed by the selection clause, Colonia is also bound does not stand up  in its own shoes, on its own two feet, on its own hind legs or whatever. This case will determine which of the two carriers will ultimately pay. The "member" insured is a wholly disinterested non-party to this controversy. See Holyoke Mut. Ins. Co. v. Concrete Equip., Inc., 394 So.2d 193 (Fla. 3d DCA 1981) (action may be maintained directly by subrogated party, as real party in interest, against third party defendant), review denied, 402 So.2d 609 (Fla. 1981). By its own terms, the clause therefore does not apply.
Our conclusion to this effect is made even clearer by comparing the present provision with the broader one involved in Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1067 (11th Cir.1987), aff'd, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). There, the clause encompassed any "case or controversy arising under or in connection with this [a]greement." Since Skuld's obligations to defend and indemnify indeed arise out of its contract with the insured, Poseidon, see American Home Assurance Co. v. City of Opa Locka, 368 So.2d at 416, Skuld's position here might well be acceptable under this language. Particularly because, however, the contract must be read against Skuld, both as its drafter and because the provision it invokes seeks to limit the availability of an otherwise appropriate forum, see Granados Quinones v. Swiss Bank Corp., 509 So.2d 273 (Fla. 1987), the contrasting language it did choose requires the rejection of its claim.
Holyoke Mut. Ins. Co. v. Concrete Equip., Inc., 394 So.2d at 193 involved an "exception" to the "stand in the shoes" doctrine under which the subrogee is not bound by a limitation on a claim which does not inhere in the cause of action itself but is only personally applicable to the subrogor. That is true here. The clause concerns only disputes involving Poseidon, which the present action is not.
Reversed.
NESBITT, J., concurs.
COPE, Judge (dissenting).
I respectfully dissent.
I entirely agree that the legal problem presented by the present case cannot be solved merely by reference to the maxim that the excess insurer "stands in the shoes" of its insured, but in this case both logic and the shoes fit, leading to the inevitable conclusion that the excess insurer is bound by the forum selection clause.
Where a primary insurer wrongfully refuses to defend its insured, so that the excess insurer is obliged to do so, the excess insurer may maintain an equitable subrogation action against the primary insurer. American Home Assurance Co. v. City of Opa Locka, 368 So.2d 416, 420 (Fla. 3d DCA 1979). In such an action, the excess insurer becomes "subrogated to the [insured's] right to recover from [the primary insurer] the fees and costs due him because of its wrongful refusal to defend." Id. at 420.
It is, of course, axiomatic that "`[s]ubrogation is the substitution of one person in the place of another with reference to a lawful claim or right.'" Ranger Insurance Co. v. Travelers Indemnity Co., 389 So.2d 272, 274 (Fla. 1st DCA 1980) (quoting Boley v. Daniel, 72 Fla. 121, 123, 72 So. 644, 645 (1916)). We deal here with subrogation *1012 arising by operation of law, which is "`a creation of equity ... designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another.'" Ranger Insurance Co. v. Travelers Indemnity Co., 389 So.2d at 274 (citations omitted).
This court has previously held that in an equitable subrogation action, "[t]he excess carrier ... assumes the rights as well as the responsibilities that the insured would normally have against the primary carrier." General Accident Fire & Life Assurance Corp., Ltd. v. American Casualty Co., 390 So.2d 761, 765 (Fla. 3d DCA 1980) (citation omitted; emphasis added), review denied, 399 So.2d 1142 (Fla. 1981). That holding is dispositive here. The excess insurer's rights are derived from the rights of the insured; the excess carrier effectively is the insured. If the excess carrier wants to enjoy the benefits of the insured's contract with the primary insurer, the excess carrier must be prepared to undertake the burdens, as well as the benefits, of the insurance contract. Subrogation is an equitable doctrine and the excess carrier must do, as well as seek, equity.
A hypothetical example may illustrate the inequities in the majority's approach. Assume that the primary carrier wrongfully refuses to defend the insured, and the insured defends himself through the pretrial phase. On the eve of trial the excess carrier decides to provide a defense. After trial, the insured sues for his out-of-pocket attorney's fees and costs, while the excess carrier brings a subrogation action for its attorney's fees and costs expended in defense of the insured. Under the majority's approach, the insured would be bound by the forum selection clause of the primary insurance contract and must litigate in the agreed forum, while the excess carrier, seeking attorney's fees and costs for a portion of the defense of the same case, is not bound. That is an illogical result.
The majority suggests that the foreign insurer should have written its insurance contract in broader language so as to take into account possible claims under the equitable subrogation doctrine. I cannot agree. The primary insurance contract regulates the relationship between the primary insurer and the insured. It need do no more. The excess insurer in this case has a claim only because, as a matter of law, it is substituted for the insured for that purpose. If the excess insurer is the insured for purposes of making the claim, then the excess insurer is also the insured for purposes of the forum selection clause. In drafting this insurance contract, the foreign insurer was not obliged to anticipate that the equitable subrogation doctrine would be interpreted in an inequitable way.
I would affirm the judgment.