AMERICAN CENTENNIAL INSURANCE COMPANY and First State Insurance Company, Petitioners,

v.

CANAL INSURANCE COMPANY, Talbert, Biessel, Stone & Lyman, Giessel, Stone, Barker & Lyman, Henry P. Giessel and Richard S. Joseph, Respondents.

No. D–1213.

Supreme Court of Texas.

Dec. 16, 1992.

---

Larry J. Doherty, Michael H. Norman, Jimmy Williamson, Houston, for petitioners.

Robert A. Black, John D. Rienstra, Jr., Beaumont, William E. Junell, Jr., Richard Warren Mithoff, Scott Rothenberg, Houston, for respondents.

## OPINION

DOGGETT, Justice.

■ We consider whether an excess insurance carrier has a cause of action against a primary carrier and trial counsel for mishandling a claim. We extend this court's holding in *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved), to permit such an action.

General Rent–A–Car International, Inc. was sued for injuries and death allegedly resulting from a blowout of a defective tire on one of its rental cars. At the time of the accident, General was insured by three companies. Canal Insurance Co., the primary carrier, provided coverage to $100,000; First State Insurance Co. insured from $100,000 to $1 million; and American Centennial Insurance Co. was responsible for $1 million to $4 million. Canal investigated and defended the suit, hiring an outside law firm.[1] Because of alleged mishandling by trial counsel of the litigation, the insurers were forced to settle for $3.7 million.

The two excess carriers, First State and American Centennial brought suit against Canal, the law firm handling the defense and two of the firm's attorneys for negligence, gross negligence, breach of the duty of good faith and fair dealing and violations of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code §§ 17.41–.63, and article 21.21 of the Texas Insurance Code. The trial court granted summary judgment, denying all claims as barred by the statute of limitations, determining that the primary insurer and its counsel owed no duties to the excess carriers and finding that no genuine

---

1. That law firm apparently changed names during the litigation, from Talbert, Giessel, Stone and Lyman to Giessel, Stone, Barker and Lyman.

issue of material fact existed. The court of appeals reversed the judgment as to Canal, but affirmed as to defense counsel on the basis of the statute of limitations. 810 S.W.2d 246. Because we hold that the excess carrier may bring an equitable subrogation action against both the primary insurer and defense counsel and that a fact issue was raised in the summary judgment record as to whether the claim was properly handled, we affirm in part and reverse in part.

Texas law vests a clear right in the insured to sue the primary carrier for a wrongful refusal to settle a claim within the limits of the policy. *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544. The insurer's duty to act as an ordinarily prudent person in business management extends to claim investigation, trial defense and settlement negotiations. *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex.1987). We have not previously considered whether a similar duty is imposed upon the primary insurer in protecting the excess carrier from damages for wrongful handling of a claim.

Although a question of first impression in Texas, many other states have considered whether the doctrine of equitable sub-

rogation permits actions between carriers. Under this theory, the insurer paying a loss under a policy becomes equitably subrogated to any cause of action the insured may have against a third party responsible for the loss. The excess insurer would thus be able to maintain any action that the insured may have against the primary carrier for mishandling of the claim. Equitable subrogation has been recognized in Texas, although not in this particular context. *See, e.g., Employers Casualty Co. v. Transport Ins. Co.*, 444 S.W.2d 606, 610 (Tex.1969); *Interfirst Bank Dallas, N.A. v. United States Fidelity and Guar. Co.*, 774 S.W.2d 391, 397 (Tex.App.—Dallas 1989, writ denied); *International Ins. Co. v. Medical–Professional Bldg. of Corpus Christi*, 405 S.W.2d 867, 869 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.).

While many states recognize an action by an excess carrier against a primary insurer,[2] a majority of those permitting suit do so on grounds of equitable subrogation.[3] In recognizing a cause of action for equitable subrogation, these courts have sought to encourage fair and reasonable settlement of lawsuits. *See Northwestern Mut. Ins. Co. v. Farmers Ins. Group*, 76 Cal. App.3d 1031, 1050–51, 143 Cal.Rptr. 415, 427 (1978); *Ranger Ins. Co. v. Travelers*

---

**2.** *But see Great Southwest Fire Ins. Co. v. CNA Ins. Cos.*, 547 So.2d 1339 (La.Ct.App.1989) (rejecting action by excess carrier), *aff'd*, 557 So.2d 966 (La.1990); *Allstate Ins. Co. v. Reserve Ins. Co.*, 116 N.H. 806, 373 A.2d 339 (1976) (no cause of action against the primary insurer).

**3.** *Hartford Accident & Indem. Co. v. Aetna Casualty & Sur. Co.*, 164 Ariz. 286, 792 P.2d 749, 757 (1990) (of the many states that have permitted such an action, most have adopted the theory of equitable subrogation); *Continental Casualty Co. v. Royal Ins. Co.*, 219 Cal.App.3d 111, 268 Cal.Rptr. 193 (1990); *Hawkeye–Security Ins. Co. v. Indemnity Ins. Co.*, 260 F.2d 361 (10th Cir. 1958) (applying Colorado law); *Colonia Ins. Co. v. Assuranceforeningen Skuld*, 588 So.2d 1009, 1010–11 (Fla.Dist.Ct.App.1991) (although recognizing suits generally on grounds of equitable subrogation, permitting action on different grounds); *Home Ins. Co. v. North River Ins. Co.*, 192 Ga.App. 551, 385 S.E.2d 736 (1989); *First Ins. Co. v. Continental Casualty Co.*, 466 F.2d 807 (9th Cir.1972) (applying Hawaii law); *Certain Underwriters of Lloyd's v. General Accident Ins. Co.*, 699 F.Supp. 732 (S.D.Ind.1988), *aff'd*, 909

F.2d 228 (7th Cir.1990) (applying Indiana law and noting trend of allowing excess insurer to sue primary carrier under doctrine of equitable subrogation); *Insurance Co. of N. Am. v. Medical Protective Co.*, 768 F.2d 315 (10th Cir.1985) (applying Kansas law); *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 62 Ohio St.2d 221, 404 N.E.2d 759 (1980); *Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 308 Md. 315, 519 A.2d 202 (Ct.Spec.App.1987); *Commercial Union Ins. Co. v. Medical Protective Co.*, 426 Mich. 109, 393 N.W.2d 479, 483 (1986); *Continental Casualty Co. v. Reserve Ins. Co.*, 307 Minn. 5, 238 N.W.2d 862, 865 (1976) ("The bulk of the well-reasoned authority ... supports the existence of a duty owed by a primary to an excess carrier."); *Maine Bonding & Casualty Co. v. Centennial Ins. Co.*, 298 Or. 514, 693 P.2d 1296 (1985); *F.B. Washburn Candy Corp. v. Fireman's Fund*, 373 Pa.Super. 479, 541 A.2d 771 (1988); *National Farmers Union Property & Casualty Co. v. Farmer's Ins. Group*, 14 Utah 2d 89, 377 P.2d 786 (1963); *Vencill v. Continental Casualty Co.*, 433 F.Supp. 1371 (S.D.W.Va.1977); *Teigen v. Jelco of Wisconsin, Inc.*, 124 Wis.2d 1, 367 N.W.2d 806 (1985).

*Indem. Co.*, 389 So.2d 272, 275 (Fla.Dist.Ct. App.1980). If the excess carrier had no remedy, the primary insurer would have less incentive to settle within the policy limits. *Hartford Accident & Indem. Co. v. Aetna Casualty & Sur. Co.*, 164 Ariz. 286, 792 P.2d 749, 757 (1990); *Commercial Union Ins. Co. v. Medical Protective Co.*, 426 Mich. 109, 393 N.W.2d 479, 483 (1986) ("[A]llowing the excess insurer to enforce the primary insurer's duty to settle in good faith serves the public and judicial interests in fair and reasonable settlements of lawsuits by discouraging primary carriers from 'gambling' with the excess carrier's money when potential judgments approach the primary insurer's policy limits."). Additionally, the wrongful failure to settle would likely result in increased premiums by excess carriers. *See id.; Peter v. Travelers Ins. Co.*, 375 F.Supp. 1347, 1350–51 (C.D.Cal.1974).

These courts have also employed equitable subrogation "to prevent an unfair distribution of losses among primary and excess insurers." *Hartford Accident & Indem. Co. v. Aetna Casualty & Sur. Co.*, 792 P.2d at 757; *see Continental Casualty Co. v. Reserve Ins. Co.*, 238 N.W.2d at 865.

Because we find the reasoning of these cases persuasive, we hold that an excess carrier may bring an equitable subrogation action against the primary carrier. This does not, however, impose new or additional burdens on the primary carrier, since our prior decisions in *Stowers* and *Ranger County* imposed clear duties on the primary carrier to protect the interests of the insured. The primary carrier should not be relieved of these obligations simply because the insured has separately contracted for excess coverage. *See Peter v. Travelers Ins. Co.*, 375 F.Supp. at 1350; *Commercial Union Ins. Co. v. Medical Protective Co.*, 393 N.W.2d at 483. In this situation, where the insured has little incentive to enforce the primary carrier's duties, the

excess carrier should be permitted to do so through equitable subrogation.

American Centennial and First State urge the court to recognize a direct duty running from the primary to the excess insurer. Only a few jurisdictions have permitted a direct action, rather than limiting the excess carrier to an equitable subrogation claim.[4] Excess insurers prefer a direct action because, under the theory of equitable subrogation, they are subject to any defenses assertable against an insured, including the refusal to settle and the failure to cooperate. Because none of these circumstances is present in the case before us, however, and the excess insurers appear to have an adequate remedy using equitable subrogation, we decline at this time to permit a direct action. *See Twin City Fire Ins. Co. v. Superior Court*, 164 Ariz. 295, 792 P.2d 758, 759 (1990).

The court of appeals correctly held that the equitable subrogation claim against Canal was not time-barred. Since the applicable statute of limitations parallels that of a traditional *Stowers* action, this action was timely brought. We also agree that any claims against Canal for negligence, gross negligence and violations of the DTPA and Insurance Code were barred by the applicable statutes of limitations. Thus we need not, and do not, decide whether the doctrine of equitable subrogation would extend to permit such actions by an excess carrier against the primary insurer.

■ The court of appeals held the action against the attorneys was barred by the statute of limitations, finding the excess insurers' cause of action accrued at the time of the alleged malpractice. This conflicts with our recent writing in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex.1991), that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations is tolled until all appeals on the underlying claim are ex-

---

4. *American Centennial Ins. Co. v. American Home Assurance Co.*, 729 F.Supp. 1228, 1232 (N.D.Ill.1990); *St. Paul–Mercury Indem. Co. v. Martin*, 190 F.2d 455 (10th Cir.1951) (applying Oklahoma law); *Western World Ins. Co. v. Allstate Ins. Co.*, 150 N.J.Super. 481, 376 A.2d 177,

180 (Ct.App.Div.1977); *Zurich Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 137 A.D.2d 401, 524 N.Y.S.2d 202, 203 (1988); *see also Colonia Ins. Co. v. Assuranceforeningen Skuld*, 588 So.2d at 1010–1011 (recognizing direct action in certain circumstances).

hausted." The court of appeals' holding is thus in error.

Because the malpractice suit is not time-barred, we must consider whether an excess carrier may bring such a cause of action. Under Texas law, attorneys are not ordinarily liable for damages to a non-client, because privity of contract is absent. *See, e.g., Parker v. Carnahan,* 772 S.W.2d 151, 156 (Tex.App.—Texarkana 1989, writ denied); *First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin and Stewart,* 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Bell v. Manning,* 613 S.W.2d 335, 339 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.). Texas courts have been understandably reluctant to permit a malpractice action by a nonclient because of the potential interference with the duties an attorney owes to the client. *See, e.g.,* Supreme Court of Texas, State Bar Rules art. X, § 9 (Texas Disciplinary Rules of Professional Conduct), Rule 2.01 (1990) (requiring exercise of independent professional judgment on behalf of client). None of these prior cases, however, have considered whether an excess carrier may be equitably subrogated to an insured's action against counsel.

The few jurisdictions to have considered this question are divided on whether to permit suit.[5] The single Texas decision to consider this issue held that the excess carrier may bring a malpractice action. *Stonewall Surplus Lines Ins. Co. v. Drabek,* 835 S.W.2d 708 (Tex.App.—Corpus Christi 1992, writ denied) (en banc).

Although in the context of insurance defense, the insurance company pays the legal fees, the attorney "owes the insured the same type of unqualified loyalty as if he had been originally employed by the insured." *Employers Casualty Co. v. Tilley,* 496 S.W.2d 552, 558 (Tex.1973); *see also* 16A Appleman, Insurance Law and Practice § 8839.35, at 108 & n. 9.5 (1981). Defense counsel must be particularly sensitive to the varying interests of the insured and the insurer which produce complex and often conflicting relationships.

Recognizing an equitable subrogation action by the excess carrier against defense counsel would not, however, interfere with the relationship between the attorney and the client nor result in additional conflicts of interest. Subrogation permits the insurer only to enforce existing duties of defense counsel to the insured.

Further, the concerns of the excess and primary carriers and the insured generally overlap in ensuring that the merits of the defense are not precluded from being heard because of attorney malpractice. "The best interests of both insurer and insured converge in expectations of competent representation." *Atlanta Int'l Ins. Co. v. Bell,* 438 Mich. 512, 475 N.W.2d 294, 298 (1991). While in some circumstances these interests may diverge, presenting a different situation, here the excess insurers do not predicate liability on tactical decisions by trial counsel implicating conflicting interests between the insured and the insurer.

Those considerations that have resulted in our recognizing an excess carrier's right to bring an equitable subrogation action against the primary insurer offer similar support for an action by the excess carrier against defense counsel.[6] No new or additional burdens are imposed on the attorney, who already has the duty to represent the

---

**5.** *Compare Great Atlantic Ins. Co. v. Weinstein,* 125 A.D.2d 214, 509 N.Y.S.2d 325, 326–27 (1986) (excess insurer may pursue malpractice claim); *Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co.,* 93 A.D.2d 337, 462 N.Y.S.2d 175 (1983), *aff'd,* 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984) (recognizing action by excess carrier), *with St. Paul Ins. of Bellaire v. AFIA Worldwide Ins.,* 937 F.2d 274, 276, 279 (5th Cir.1991) (applying Louisiana law; disallowing action premised on third-party beneficiary or direct duty); *Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 105–07 (2d Cir.1991) (applying Connecticut law;

excess insurer not third party beneficiary nor can it bring equitable subrogation action); *American Employers Ins. Co. v. Medical Protective Co.,* 165 Mich.App. 657, 419 N.W.2d 447, 448 (Mich.Ct.App.) (no subrogation action against defense counsel), *appeal denied,* 431 Mich. 856 (1988).

**6.** The question of whether a malpractice claim may be assigned is not presented today; our inquiry is limited solely to whether the doctrine of equitable subrogation permits an excess insurer to sue in the stead of the insured.

insured previously described in *Employers Casualty Co.* Defense counsel should not be relieved of these obligations merely because the insurer, rather than the client, must pay the claim. If the asserted malpractice has resulted in payment of a judgment or settlement within the excess carrier's policy limits, the insured has little incentive to enforce its right to competent representation. Refusal to permit the excess carrier to vindicate that right would burden the insurer with a loss caused by the attorney's negligence while relieving the attorney from the consequences of legal malpractice. Such an inequitable result should not arise simply because the insured has contracted for excess coverage.[7]

The court of appeals correctly remanded for further proceedings as to the cause of action of First State and American against Canal for wrongful handling of a claim but erred in failing to allow the insurers to pursue their malpractice action against defense counsel. The judgment of the court of appeals is affirmed in part and reversed in part.

Concurring opinion by HECHT, J., joined by PHILLIPS, C.J., and GONZALEZ, COOK and CORNYN, JJ.

HECHT, Justice, concurring.

I agree that if an excess insurance carrier is required to pay a portion of a judgment rendered against its insured in favor of a third party, it is equitably subrogated to its insured's rights against a primary insurance carrier under *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved), and *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656 (Tex.1987), for negligently investigating, preparing to defend, trying or settling the third party action. As the Court notes, this is already the rule in many jurisdictions. *Ante* at 482 & n. 3; *see also North River Ins. Co. v. St.*

*Paul Fire & Marine Ins. Co.*, 600 F.2d 721, 723 n. 3 (8th Cir.1979); *Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 308 Md. 315, 519 A.2d 202, 204–205 (1987); *see generally* Annotation, *Excess Carrier's Right to Maintain Action Against Primary Liability Insurer for Wrongful Failure to Settle Claim Against Insured*, 10 A.L.R. 4th 879, 881–87 (1981); Jane M. Draper, *Liability Insurance: Excess Carrier's Right of Action Against Primary Carrier for Improper or Inadequate Defense of Claim*, 49 A.L.R. 4th 304, 305 (1986); Cherry D. Williams, *A New Twist in Insurance Litigation:* Stowers *Suits by Excess Carriers Against Primary Carriers*, 33 S.Tex. L.Rev. 1 (1992); Anthony M. Lanzone & Stephen G. Ringel, *Duties of a Primary Insurer to an Excess Insurer*, 61 Neb. L.Rev. 259 (1982). As a general rule, "[s]ubrogation gives indemnity and no more." *Phipps v. Fuqua*, 32 S.W.2d 660, 663 (Tex.Civ.App.—Amarillo 1930, writ ref'd) (citation omitted). Thus, an excess carrier may recover only the difference between what it was required to pay and what it would have paid but for the primary carrier's negligent handling of the action, plus interest. It is not entitled to damages in its own right, or statutory or punitive damages. *See InterFirst Bank Dallas v. United States Fidelity & Guar. Co.*, 774 S.W.2d 391, 399 (Tex.App.—Dallas 1989, writ denied) (subrogee limited to recovery of amount paid); *McAllen State Bank v. Linbeck Constr. Corp.*, 695 S.W.2d 10, 24 n. 5 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (subrogee not entitled to statutory damages under Texas Deceptive Trade Practices—Consumer Protection Act). The primary carrier is entitled to assert any defense available against either the insured or the excess carrier.

The excess carriers in this case assert claims against the primary carrier based

---

7. In permitting the primary carrier to bring a malpractice action against the insured's defense counsel, one court concluded:

[T]o completely absolve a negligent defense counsel from malpractice liability would not rationally advance the attorney-client relationship. Moreover, defense counsel's immunity from suit by the insurer would place the

loss for the attorney's misconduct on the insurer. *The only winner produced by an analysis precluding liability would be the malpracticing attorney.* Equity cries out for application [of equitable subrogation] under such circumstances.

*Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 475 N.W.2d 294, 298 (1991) (emphasis added).

upon negligence, gross negligence, breach of a duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act, TEX.BUS. & COM.CODE §§ 17.41–.63, and article 21.21 of the Texas Insurance Code. Although the Court does not expressly consider which of these theories is available to the excess carriers by subrogation, I assume from its reliance on the *Stowers* and *Ranger County* cases, and would so hold, that the excess carriers' only cause of action is for negligence. I agree with the Court that the primary carrier failed to establish as a matter of law that such an action is barred by limitations.

I also agree that an excess carrier in the circumstances described above is equitably subrogated to its insured's rights against his attorney for negligent handling of the defense of the third party action. *Ante* at 484 n. 5; *see generally* Ronald E. Mallen & Jeffrey M. Smith, LEGAL MALPRACTICE §§ 7.7, 23.11 (1989). Like the primary carrier, the attorney would have any defense available against either the insured or the excess carrier, including the excess carrier's unreasonable refusal to cooperate in the defense and settlement of the action. Thus, the attorney should not be exposed to any greater liability to the excess carrier than to his client, the insured. Again, the excess carrier is limited to an action for negligence, which, on the record before us, is not as a matter of law barred by limitations. By allowing the excess carrier an action against its insured's attorney through equitable subrogation, the Court's holding does not suggest that a client's rights against his attorney may be assigned. *See id.;* CHARLES F. HERRING, JR., TEXAS LEGAL MALPRACTICE & LAWYER DISCIPLINE § 3.28 (1991).

With this understanding of the Court's opinion, I join in the judgment.

PHILLIPS, C.J., and GONZALEZ, COOK and CORNYN, JJ., join in this concurring opinion.