**Revised May 25, 1999**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-20211

_____

GENERAL STAR INDEMNITY COMPANY,

Plaintiff-Appellant,

versus

VESTA FIRE INSURANCE CORPORATION;
LIBERTY NATIONAL FIRE INSURANCE COMPANY;
LIBERTY NATIONAL FIRE INSURANCE COMPANY,
doing business as Vesta Fire Insurance Corporation,

Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Texas

_____
May 6, 1999
Before DAVIS, SMITH and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant General Star Indemnity Company ("General Star") appeals the district court's order granting the motion of Defendant-Appellee Vesta Fire Insurance Corporation ("Vesta") to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons expressed below, we reverse the district court's order, and remand the case for further proceedings.

**I**

**FACTS AND PROCEEDINGS**

The instant lawsuit arose out of a state wrongful death and survival action filed by the parents and estate of Karen Crawford after she was murdered in the mail room of Champion Woods Apartments (the "Apartments"). Champion Woods Associates ("CWA"), a limited partnership, owned the property on which Crawford was killed. CWA's general partner was Michael Stevens Interests, Inc. ("MSI"), which also served in a separate capacity as the Apartment's property manager. The state court action named MSI as a defendant based both on its ownership interest in the apartment complex and the property management services it performed.

Two insurance companies provided coverage for the relevant parties. Under a $1 million general liability policy, Vesta insured CWA and MSI, covering MSI both as general partner and as property manager. General Star provided "primary" liability coverage to MSI as general partner,[1] and, pursuant to a policy endorsement, provided "excess" liability coverage to MSI as property manager.[2]

When the underlying action was initiated, Vesta appointed counsel to defend its insureds, both CWA and MSI. General Star, on the other hand, elected not to appoint counsel. Rather, it informed Vesta that it would monitor the case as excess insurer of

---

[1]General Star's coverage for MSI as general partner was in the amount of $1 million per occurrence.

[2]General Star's excess coverage was in the amount of $3 million per occurrence.

MSI in its capacity as apartment manager. General Star did not assume any responsibility as primary insurer of MSI in its capacity as general partner.

In a pre-mediation status report, the defense counsel retained by Vesta advised both Vesta and General Star that, although he did not believe that MSI was negligent, an adverse jury verdict could nevertheless be significant. Counsel estimated the settlement value of the case to be $500,000, but maintained that plaintiffs probably would not settle for less than $1 million.

Vesta participated in mediation efforts that proved unsuccessful, but General Star did not participate. According to General Star, Vesta's highest offer during mediation was $100,000. As a result, General Star wrote to Vesta shortly after mediation broke down, complaining that Vesta was not making a concerted effort to settle the claim. In response, Vesta advised General Star that it, rather than Vesta, was the primary insurer for MSI in its role as general partner, and that if General Star believed a higher settlement offer was warranted, it should "get its checkbook out." Thereafter, the Crawfords made a final settlement offer of $1 million which, Vesta contends, was unanimously rejected by both insurers. General Star disputes this contention, arguing that both it and MSI unsuccessfully urged Vesta to accept the offer.

Ultimately, the case proceeded to trial, resulting in a jury verdict for the Crawfords and the decedent's estate in the amount of $9.4 million. The jury apportioned 35% of the liability to CWA,

3

35% to MSI in its capacity as general partner, and 15% to MSI in its capacity as apartment manager.[3] The parties settled the case prior to initiation of appellate proceedings. In accordance with their respective policy limits, Vesta contributed $1 million and General Star contributed $3.6 million to the $4.6 million settlement.

Thereafter, General Star sued Vesta to recover the money it had paid in settlement, alleging liability under theories of (1) equitable subrogation, (2) breach of the duty of good faith and fair dealing, (3) violations of the Texas Insurance Code, (4) negligence, (5) gross negligence, and (6) breach of contract.

The district court granted Vesta's Rule 12(b)(6) motion, concluding that General Star's complaint failed to state a claim on which relief could be granted. In support of this conclusion, the court noted that (1) General Star sought to recover from Vesta on a theory of direct liability not recognized under Texas law, (2) there was no evidence to support a claim by MSI to which General Star could be subrogated, and (3) because the evidence indicated that General Star was a primary carrier with a duty to defend MSI, General Star was barred from asserting any claim for damage arising out of its failure to do so. General Star appealed from this ruling.

**II**

---

[3]The remaining 15% of liability was assessed against a defendant not party to the instant suit.

**ANALYSIS**

## A.   Standard of Review

This court reviews <u>de novo</u> a district court's ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), applying the same standard as the district court.[4]

## B.   Applicable Law

Texas law permits actions between insurance carriers under the doctrine of equitable subrogation.[5]  Equitable subrogation is the legal fiction through which a person or entity, the subrogee, is substituted, or subrogated, to the rights and remedies of another by virtue of having fulfilled an obligation for which the other was responsible.[6]   According to this doctrine, an excess insurer, paying a loss under a policy, "stands in the shoes" of its insured with regard to any cause of action its insured may have against a primary insurer responsible for the loss.[7]  It is elementary that, before an excess insurer can recover from a primary insurer under the doctrine of equitable subrogation, the excess insurer must

---

[4]<u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899, 901 (5th Cir. 1997).

[5]<u>American Centennial Ins. Co. v. Canal Ins. Co.</u>, 843 S.W.2d 480, 482-83 (Tex. 1992)(hereinafter <u>Canal Ins. Co.</u>).

[6]<u>National Union Fire Ins. Co. v. CNA Ins. Cos.</u>, 28 F.3d 29, 31 n.2 (5th Cir. 1994)(hereinafter <u>CNA Ins. Co.</u>).

[7]<u>Westchester Fire Ins. v. Heddington Ins.</u>, 883 F. Supp. 158, 162 (S.D. Tex. 1995), <u>aff'd</u>, 84 F.3d 432 (5th Cir. 1996); <u>Canal Ins. Co.</u>, 843 S.W.2d at 482-83.

first prove that the primary insurer failed to fulfill a duty owed to the insured.[8]

Texas law recognizes only one tort duty in the context of third party claims against an insured, that being the duty owed by a primary insurer to its insured, as set forth seventy years ago in the landmark case of G.A. Stowers Furniture Co. v. American Indemnity Co..[9]  In Stowers, the Texas Commission of Appeals held that an insurer which, under the terms of its policy, assumes control of a claim, becomes the agent of the insured and is held to the degree of care and diligence that an "ordinarily prudent person would exercise in the management of his own business."[10]  Although Stowers focused specifically on an insurer's obligation to settle within the limits of its policy,[11] the duty owed by an insurer to

---

[8]Employers Nat'l Ins. Co. v. General Accident Ins. Co., 857 F. Supp. 549, 552 (S.D. Tex. 1994); Canal Ins. Co., 843 S.W.2d at 482-83.

[9]15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved); Maryland Ins. Co. v. Head Indus. Coatings & Serv., Inc., 938 S.W.2d 27, 28-9 (Tex. 1996)(hereinafter Head Indus. Coatings)(stating that, because an insured is "fully protected against his insurer's refusal to defend or mishandling of a third-party claim by his contractual and Stowers rights," imposing an additional duty on insurers is neither necessary nor appropriate).

[10]15 S.W.2d at 547.

[11]The Stowers court determined that an insurer may be held liable to an insured in excess of its policy limits for failure to settle if: (1) a third party claim against the insured was within the scope of coverage; (2) there was an unconditional demand within the policy limits; and (3) the terms of the demand were such that an ordinarily prudent insurer would have accepted it, considering the likelihood and degree of the insured's potential exposure to an excess judgment.  American Physicians Ins. Exch. v. Garcia, 876

6

its insured has since been broadly interpreted by the Texas Supreme Court to include the full range of obligations arising out of an agency relationship.[12] A breach of the Stowers duty by an insurer gives rise to a cause of action in negligence against that insurer by its insured.[13]

In Foremost County Mutual Insurance Co. v. Home Indemnity Co.,[14] we declined to extend directly to co-insurers the duty owed by an insurer to its insured under Stowers.[15] Although some

_____

S.W.2d 842, 849 (Tex. 1994).

[12]Ranger County Mut. Ins. Co. v. Guin, 723 S.W.2d 656, 659 (Tex. 1987)(holding that an insurer's duty includes investigation, preparation for defense of the lawsuit, trial of the case and reasonable attempts to settle).

[13]G.A. Stowers Furniture Co., 15 S.W.2d at 547. There is ample support for the proposition that, in a cause of action arising out of the mishandling of a claim by an insurer, negligence is the only tort theory under which an insured is entitled to recover. See Canal Ins. Co., 843 S.W.2d at 486 (Hecht, J., concurring)(noting that "[a]lthough the Court does not expressly consider which of these theories [negligence, gross negligence, breach of a duty of good faith and fair dealing, and violations of the Texas Insurance Code] is available to the excess carriers by subrogation, I assume from its reliance on the Stowers and Ranger County cases, and would so hold, that the excess carriers' only cause of action is for negligence" —— four Justices joined in this concurring opinion); National Union Fire Ins. Co. v. Insurance Co. of North America, 955 S.W.2d 120, 134 (Tex. App. —— Houston[14th Dist.] 1997, reh'g overruled)(holding that an excess carrier cannot, as a matter of law, bring claims for gross negligence or violations of the Insurance Code against a primary carrier in a suit based upon equitable subrogation); Head Indus. Coatings, 938 S.W.2d at 28(refusing to recognize a cause of action of breach of the duty of good faith and fair dealing under Stowers).

[14]897 F.2d 754 (5th Cir. 1990).

[15]Id. at 758 n.5. This court noted in Foremost that "[t]he raison d'etre for the Stowers doctrine is that the insurer, when in

7

jurisdictions impose both this duty and others on the relationship between excess and primary carriers, and permit actions based on a breach of these duties,[16] Texas has yet to so.[17]  Consequently, an excess insurer may only assert a cause of action for a primary insurer's breach of its Stowers duty if it does so while standing in the shoes of its insured.[18]

General Star argues that the facts stated in its First Amended Original Complaint were sufficient to state a claim of negligence through equitable subrogation,[19] and that the district court erred in granting Vesta's motion to dismiss.  Given the liberal pleading standard required by the federal rules, we agree.

---

control of the litigation, might refuse a settlement offer that its client, the insured, would want to accept if it had the option." Id.

[16]See, e.g., St. Paul-Mercury Indem. Co. v. Martin, 190 F.2d 455, 457 (10th Cir. 1951)(applying Oklahoma law); American Centennial Ins. Co. v. American Home Assurance Co., 729 F. Supp. 1228, 1232 (N.D. Ill. 1990).

[17]CNA Ins. Cos., 28 F.3d  at 33 n.5; Canal Ins. Co., 843 S.W.2d at 483.

[18]In recognizing the availability of this remedy, the Texas Supreme Court reasoned that, if excess carriers were not subrogated to the claims of their insureds, primary insurers would have less incentive to settle within their policy limits and might be tempted to "gamble" with excess carriers' money when potential judgments approach the primary insurers' limits.  Canal Ins. Co., 843 S.W.2d at 483.

[19]At oral argument on appeal, General Star dropped all claims against Vesta except negligence through equitable subrogation. Consequently, in our review of this case, we do not consider the availability of relief to General Star under any of its previously advanced theories.

The Federal Rules of Civil Procedure require a "short and plain statement of the claim showing that the pleader is entitled to relief."[20]  Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist.[21]

In Paragraph 21 of its amended complaint General Star asserts:

> The Defendants, as primary insurers, <u>owed Plaintiff</u>, as provider of excess coverage, a duty to handle the Underlying Litigation in a reasonably prudent manner.  This duty includes investigation of the claim, trial defense, and settlement negotiations. The Defendants breached this duty by unreasonably ignoring the recommendations and evaluations of defense counsel; by offering ridiculously low amounts of money to settle a very serious claim; and by allowing an opportunity to settle within primary limits lapse, despite the Plaintiff's urging and the urging of the Defendant's [sic] insured.[22]

Vesta submits that this pleading is deficient because it fails to state an essential element of General Star's claim; namely, a duty owed to MSI.  Under Texas law, asserts Vesta, General Star is limited to those claims that it can bring as a subrogee.  Because Paragraph 21 mistakenly frames General Star's negligence claim in terms of Vesta's alleged breach of a duty owed to General Star

---

[20]FED. R. CIV. P. 8(a).

[21]<u>Walker v. South Cent. Bell Tel. Co.</u>, 904 F.2d 275, 277 (5th Cir. 1990).

[22](Emphasis added).

9

rather than MSI, argues Vesta, the complaint fails to set forth facts sufficient to state a claim on which relief can be granted. We reject this hyper-technical reading of General Star's complaint.

Paragraph 21 correctly characterizes the nature of the duty owed by Vesta under Texas law, and succinctly describes the circumstances which gave rise to an alleged breach of this duty. General Star's only misstep in Paragraph 21 was attributing Vesta's duty as owed to General Star rather than to MSI. General Star mitigates the potentially damaging effect of this error, however, by further alleging in Paragraph 23 that "[a]s the excess carrier for MSI, . . . General Star is <u>equitably subrogated</u> to MSI's rights against Vesta and hereby asserts MSI's claim against Vesta."[23] Despite General Star's inelegant pleading, we conclude that, when read as a whole, the complaint provides sufficient information to put Vesta on notice of General Star's claim of negligence through equitable subrogation.

Although the district court set forth the appropriate legal standard by which it was to review Vesta's Rule 12(b)(6) motion, it is unclear from the court's memorandum opinion whether it in fact treated Vesta's motion as a motion to dismiss or as a motion for summary judgment. To the extent that the district court supported its order with legal conclusions drawn from unsubstantiated and impermissible fact determinations, we reverse.

---

[23](Emphasis added).

Specifically, we reject as premature the district court's conclusion that there is insufficient evidence to support a claim by MSI against Vesta to which General Star could be equitably subrogated. Taking the facts alleged in the body of the complaint together with the specific allegation of breach in Paragraph 21, General Star has alleged —— as subrogee —— a <u>Stowers</u> claim sufficient to survive a Rule 12(b)(6) motion. Whether General Star ultimately will be able to adduce evidence sufficient to support this claim on its merits is not a question for our consideration at this early stage in the proceedings any more than it was for the district court.

Likewise, we reject the district court's conclusion that General Star's status as a primary insurer prohibits it from obtaining relief under any set of facts. Based on the pleadings alone, neither General Star's status as a primary insurer nor its duty to defend MSI under the circumstances of this case can be determined conclusively.

For the foregoing reasons, we reverse the order of the district court dismissing General Star's suit, and remand for further proceedings consistent herewith.

REVERSED and REMANDED.

11