NUMBER 13-05-760-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

CAMERON LIFE INSURANCE COMPANY, Appellant,


v.
 


PACTIV CORPORATION, Appellee.

 


On appeal from the 357th District Court 


of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Rodriguez



 This is a lien priority case. Appellant, Cameron Life Insurance Company, filed
a declaratory judgment action against appellee, Pactiv Corporation, seeking a
declaration that a lien it acquired from Aaron Joiner took priority over Pactiv's lien. 
Cameron Life urged protection under section 51.006 of the Texas Property Code. (1) 
See Tex. Prop. Code Ann. § 51.006(a) (Vernon 2007). It also claimed subrogation
rights. Pactiv filed a motion for summary judgment arguing that its lien is superior to
Cameron Life's interest and that Cameron Life's subrogation claim fails. Cameron Life
filed a cross-motion for summary judgment asserting that section 51.006 maintains
Cameron Life's lien priority over Pactiv's lien and that it is entitled to subrogation. The
trial court granted summary judgment in favor of Pactiv and ordered that Pactiv's lien
on the property made the basis of the lawsuit is superior to any lien asserted by
Cameron Life and that Pactiv is entitled to foreclose on its lien against the property. 
By four issues, Cameron Life contends the trial court erred in granting Pactiv's motion
for summary judgment because (1) Cameron Life did not have personal knowledge of
Pactiv's judgment lien filed against the property, (2) it had rights of subrogation to the
first priority lien, (3) it was entitled to priority for ad valorem taxes it paid on the
property, and (4) Pactiv's abstract of judgment was defective. We affirm.

I. Background

 On May 23, 2000, DRC Distributors, Ltd. (DRC) purchased real property from
Joiner Food Services, Inc. (JFSI). (2) The purchase was seller financed by JFSI in the
form of two real estate lien notes to JFSI in the amounts of $915,438.52 and
$20,238.00. Property 1 was transferred by warranty deed with a vendor's lien, and
DRC provided deeds of trust to JFSI to further secure the purchase money debt. On
December 26, 2000, JFSI transferred its $915,438.52 note, vendor's lien, and deed
of trust lien to Joiner via a transfer of lien. On September 12, 2002, Pactiv obtained
a judgment against DRC. (3)

 On September 26, 2002, Joiner purchased a second piece of real property
(Property 2). (4) In connection with the purchase, on September 26, 2002, Joiner
borrowed $350,000.00 from Cameron Life and executed a deed of trust in favor of
Cameron Life to secure the debt. The vendor's lien contained in that deed was also
transferred to and in favor of Cameron Life. On that same day, to further secure
Joiner's $350,000.00 obligation, Joiner executed a collateral transfer of the
$915,438.52 note and deed of trust for Property 1 to Cameron Life. On October 3,
2002, this collateral transfer of note and lien and the $350,000.00 deed of trust were
recorded.

 On November 1, 2002, Pactiv filed its abstract of judgment against DRC in the
real property records of Cameron County where it was recorded and indexed by the
Cameron County Clerk. The abstract listed the address of the judgment debtor, DRC,
as 821 W. Jackson Street, Harlingen, Cameron County, Texas 78550. (5) It also named
Aaron A. Joiner as president and registered agent for DRC although the actual
registered agent and president was David Carava.

 On December 9, 2002, in lieu of Joiner foreclosing on Property 1, DRC
conveyed Property 1 by general warranty deed to Joiner as JFSI's successor, in
satisfaction of the $915,438.53 note. Also on December 9, 2002, as part of this
deed in lieu of foreclosure transaction, Joiner and JFSI executed a mutual release,
releasing, among other things, DRC from the $915,438.52 note and lien. This release
was later set aside via a default judgment in Aaron A. Joiner v. DRC Distributors, Ltd.,
DRC Management Co., Inc. and David R. Carava, Cause No. 2003-08-004217-E, in
the 357th District Court of Cameron County, Texas. On December 20, 2002, Joiner
recorded the December 9, 2002, general warranty deed.

 On January 28, 2003, Joiner executed a $400,000.00 note and deed of trust
in favor of Cameron Life, securing payment with both Property 1 and Property 2. It
is undisputed that this was a refinance of the $350,000.00 note. That same day,
Cameron Life, as holder of the $350,000.00 note and lien, acknowledged payment in
full of Property 1's $915,438.52 note that had been collaterally transferred on
September 26, 2002, and released the collateral transfer. Also on January 28, 2003,
Joiner released Property 1's note and vendor's lien dated May 23, 2000. In the
release of lien, Joiner, as holder of the note and lien, acknowledged payment in full of
the note and released Property 1 from the lien and from all liens held by Joiner,
without regard to how they were created or evidenced. On February 7, 2003,
Cameron Life recorded the January 28, 2003, deed of trust.

 On July 1, 2003, Pactiv filed a petition for judicial foreclosure, seeking
foreclosure of its judgment lien against DRC by suing Joiner, but not Cameron Life. 
The trial court's summary judgment in favor of Pactiv, concluding it had a superior lien
position, was affirmed by this Court. See Joiner v. Pactiv Corp., No. 13-04-580-CV,
2005 Tex. App. LEXIS 6364, *2 (Tex. App.-Corpus Christi Aug. 11, 2005, pet.
denied). Joiner defaulted on his $400,000.00 loan from Cameron Life. On January
28, 2004, Cameron Life sent Joiner a notice of maturity and demand for payment. 
A determination of lien priority between Cameron Life and Pactiv is necessary to
establish which party's foreclosure may actually result in a sale of the disputed
property. Cameron Life maintains that it has a valid first lien on the disputed property,
as does Pactiv.

II. Standard of Review

 Declaratory judgments are reviewed under the same standards as all other
judgments. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997); Ski River
Dev., Inc. v. McCalla, 167 S.W.3d 121, 133 (Tex. App.-Waco 2005, pet. denied);
In re Estate of Schiwetz, 102 S.W.3d 355, 365 (Tex. App.-Corpus Christi 2003, no
pet.). The standards, in this case, for review of a traditional summary judgment are
well established: the movant must show there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c);
Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). "We review the evidence
presented by the motion and response in the light most favorable to the party against
whom the summary judgment was rendered, crediting evidence favorable to that party
if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors
could not." Mack Trucks v. Tamez, 206 S.W.3d 572, 581-82 (Tex. 2006) (citing City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 208 (Tex. 2002)). A summary judgment is reviewed
de novo because the propriety of summary judgment is a question of law. Natividad
v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Fiallos v. Pagan-Lewis Motors,
Inc., 147 S.W.3d 578, 582-83 (Tex. App.-Corpus Christi 2004, pet. denied).

 "When both sides move for summary judgment and the trial court grants one
motion and denies the other, the reviewing court should review both sides' summary
judgment evidence and determine all questions presented." FM Props. Oper. Co. v.
City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). Based on our review, this Court
should then render the judgment that the trial court should have rendered. Holy Cross
Church of God in Christ v. Wold, 44 S.W.3d 562, 566 (Tex. 2001); Werden v. Nueces
County Hosp. Dist., 28 S.W.3d 649, 650 (Tex. App.-Corpus Christi 2000, no pet.). 
"When a trial court's order granting summary judgment does not specify the grounds
relied upon, the reviewing court must affirm summary judgment if any of the summary
judgment grounds are meritorious." FM Props. Oper. Co., 22 S.W.3d at 872.

II. Section 51.006 of the Property Code

 By its second issue, Cameron Life contends that section 51.006 of the Texas
Property Code protects its lien priority because, as Joiner's successor-in-interest,
Cameron Life had no personal knowledge of Pactiv's abstract of judgment. See Tex.
Prop. Code Ann. § 51.006(b), (d)-(e) (Vernon 2007) (providing that if the holder of a
debt under a deed of trust has no "personal knowledge" of any lien that was not
disclosed by the debtor, the holder's "priority of its deed of trust shall not be affected
or impaired by the execution of the deed in lieu of foreclosure"). In response, Pactiv
asserts that a plain reading of the statute indicates that section 51.006 does not apply
to Cameron Life. We agree. Section 51.006 "applies to a holder of a debt under a
deed of trust who accepts from the debtor a deed conveying real property subject to
the deed of trust in satisfaction of the debt." Id. § 51.006(a). It is undisputed that
Cameron Life is not a holder of a debt under a deed of trust who accepted from a
debtor a deed conveying real property subject to the deed of trust in satisfaction of the
debt. Thus, we conclude that the statute does not apply to Cameron Life.

 Nonetheless, to the extent it is argued that Cameron Life has protection under
section 51.006 because Joiner granted Cameron Life a security interest in the deed
of trust from DRC, we have already addressed this issue in a case involving the same
transactions and the same property. See generally, Joiner, 2005 Tex. App. LEXIS
6364, at **1-3. Section 51.006(b)(2) provides that the holder of a debt may void a
deed conveying real property in satisfaction of the debt if the debtor fails to disclose
a lien on the property and the holder has no personal knowledge of the undisclosed
lien. Tex. Prop. Code Ann. § 51.006(b)(2) (Vernon 2007). In Joiner, we noted that
Pactiv's judgment lien, properly recorded in the proper county, is notice to all persons
of the existence of the instrument. See Joiner, 2005 Tex. App. LEXIS 6364, at **9-10 (citing Tex. Prop. Code Ann. §13.002(1), (2) (Vernon 2004)). "Thus, Joiner had
notice of the judgment lien on the subject property"; his priority was affected by the
execution of the deed in lieu of foreclosure. Id.; see Tex. Prop. Code Ann. §
51.006(b)(2) (Vernon 2007). Again, in the present appeal, we conclude that record
notice satisfied the requirement of personal knowledge under the statute. Thus,
Cameron Life had the requisite notice of the judgment lien on the subject property, and
its priority was, therefore, affected by Joiner's execution of the deed in lieu of
foreclosure. Because Pactiv's summary-judgment evidence demonstrated it possessed
a superior judgment lien to Cameron Life, summary judgment as granted is proper on
that basis. See Joiner, 2005 Tex. App. LEXIS 6364, at *12. Accordingly, we
overrule Cameron Life's first issue.

III. Subrogation

 In its second issue, Cameron Life contends that it is entitled, through equitable
and conventional subrogation, to maintain its priority over Pactiv's judgment lien. 
Cameron Life asserts that it is subrogated to the lien position of the May 23, 2000
deed of trust lien assigned by the collateral transfer of the debt on Property 1 and
subsequently released in connection with Cameron Life's $400,000.00 loan to Joiner. 
Cameron Life asserts that Joiner's extinguishing DRC's obligation on the $915,438.52
note for a deed in lieu of foreclosure on Property 1 did not affect Joiner or Cameron
Life's priority lien on the property, and, thus, Cameron Life's lien against Joiner's
interest remained unchanged.

 Under the subrogation theory, one who has involuntarily discharged a debt on
behalf of another who is primarily liable for that debt is entitled to pursue any right or
claim that the debtor would have against a third party in relation to that debt. 
Westchester Fire Ins. Co. v. Admiral Ins. Co., 152 S.W.3d 172, 179 (Tex. App.-Fort
Worth 2004, pet. filed) (op. on reh'g) (en banc). But "to enforce such a right or claim,
the subrogee must first prove the debtor's (and thus, the subrogee's) entitlement to
recover on the right or claim." Id. (citing Am. Centennial Ins. Co. v. Canal Ins. Co.,
843 S.W.2d 480, 483-85 (Tex. 1992); 68 Tex. Jur. 3d Subrogation § 35 (1989)
("One who is entitled to subrogation stands in the shoes of the creditor whose rights
he or she claims, and can enforce every right that was available to the creditor. . . .
but he or she can enforce only such rights as the creditor could enforce.")).

 To be successful on its subrogation theory, Cameron Life would have to prove
that Joiner had a valid, superior interest in Property 1. However, as Pactiv urged in
its motion for summary judgment and as we have so determined, Joiner's lien position
is inferior to that of Pactiv. Joiner's position of September 26, 2002 no longer exists,
and its lien position as of the date it accepted the deed in lieu of foreclosure from DRC
became inferior to that of Pactiv. Likewise, the position Cameron Life is seeking to
subrogate either no longer exists or is one that would also be inferior to Pactiv's
position. Therefore, Cameron Life does not have entitlement to a priority interest on
the basis of equitable or conventional subrogation, and the trial court correctly granted
Pactiv summary judgment on this basis. We overrule the second issue.

IV. Taxes Paid

 By its third issue, Cameron Life contends that it is entitled to priority for ad
valorem taxes paid on Property 1 in the amount of $14,673.02. It claims entitlement 
to a super-priority lien pursuant to section 32.05(b) of the Texas Tax Code which
provides, in relevant part, as follows:

 Except as provided by Subsection (c)(1), a tax lien provided by this
chapter takes priority over:


 (1) the claim of any creditor of a person whose property is encumbered
by the lien;


 (2) the claim of any holder of a lien on property encumbered by the tax
lien . . . .


 (b-1) The priority given to a tax lien by Subsection (b) prevails, regardless
of whether the debt, lien, future interest, or other encumbrance existed
before attachment of the tax lien.


See Tex. Tax Code Ann. § 32.05(b) (Vernon Supp. 2006). Although section 32.05(b)
allows a taxing authority a lien that takes priority over most other liens and interest,
there is nothing in this section indicating that it applies to anyone other than taxing
authorities. See id.; see also id. §§ 32.01-.03 (Vernon Supp. 2006), § 32.04 (Vernon
2001), §§ 32.06-.07 (Vernon Supp. 2006), §§ 32.08-09 (Vernon 2001). Section
32.06 provides a procedure whereby the taxing authority's lien may be transferred and
another authorized to pay the taxes imposed by a taxing unit; however, Cameron Life
offered no proof of compliance with the statute to be entitled to such a transfer. 
Thus, we conclude Cameron Life is not entitled to a priority lien for the payment of
taxes on the basis of section 32.06 of the tax code.

 Finally, Cameron Life relies on Chicago Title Ins. Co. v. Lawrence Invests., Inc.,
782 S.W.2d 332, 334-35 (Tex. App.-Fort Worth 1989, writ ref'd) (reflecting a
determination of subrogation to tax lien paid by creditor), to support its position. The
Fort Worth Court held that "appellant has a prior lien to the extent that the bank's
funds were used to pay off the tax lien and the Port lien [a first purchase money lien]." 
Id. at 335. It is unclear from the opinion, however, what procedure the bank used to
pay the tax lien; thus, Chicago Title fails to provide support for Cameron Life's
position. Cameron Life also relies on Smart v. Tower Land and Inv. Co., 597 S.W.2d
333, 338 (Tex. 1980), where Tower, the mortgagee, paid taxes owed by the
mortgagor. Smart, however, is distinguishable from the facts of this case because
Tower paid taxes owed after it foreclosed on the property. Id.

 We conclude, therefore, the trial court properly granted Pactiv summary
judgment on the basis that Cameron Life was not entitled to priority for ad valorem
taxes paid on Property 1. Cameron Life's third issue is overruled.

V. Pactiv's Abstract of Judgment

 In issue four, Cameron Life argues that Pactiv's abstract of judgment is fatally
defective because it fails to provide any address for the judgment debtor DRC, (6) and,
therefore, does not comply with section 52.003(a)(4) of the Texas Property Code. 
See Tex. Prop. Code Ann. § 52.003(a)(4) (Vernon 2007). Pactiv's abstract of
judgment, however, lists the address of judgment debtor DRC as 821 W. Jackson
Street, Harlingen, Cameron County, Texas 78550.

 Section 52.003(a)(4) provides that an "abstract of judgment must show . . . the
defendant's address, or if the address is not shown in the suit, the nature of citation
and the date and place of service." Id. Based on the summary judgment evidence,
821 W. Jackson Street was the address for DRC on file with the Texas Secretary of
State at the time the lawsuit was filed, when DRC was served, and when the abstract
was recorded. A party may rely on the registered address on file with the Secretary
of State, even when the party knows that the address is no longer correct. See
Wright Bros. Energy, Inc. v. Krough, 67 S.W.3d 271, 274 (Tex. App.-Houston [1st
Dist.] 2001, no pet.). Therefore, we conclude that the Jackson Street address was
DRC's address, and Pactiv complied with the statute. Further, Cameron Life
acknowledges that service was made on David Carava, DRC's actual registered agent
and president, although Pactiv incorrectly named Joiner, and that DRC filed an answer
to Pactiv's petition. We overrule Cameron Life's fourth issue.

VI. Conclusion

 Accordingly, we affirm the judgment of the trial court.

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 23rd day of August, 2007.
1. In a separate lawsuit, Aaron Joiner also sought protection against Pactiv Corporation under
section 51.006 of the property code. In August 2005, this Court affirmed a summary judgment entered
in favor of Pactiv and against Joiner, concluding Pactiv possessed a superior lien. See Joiner v. Pactiv
Corp., No. 13-04-580-CV, 2005 Tex. App. LEXIS 6364, at *12 (Tex. App.-Corpus Christi Aug. 11,
2005, pet. denied). Joiner is not a party to the present appeal.
2. This property (Property 1) is described as:


 Lots Seven (7), Eight (8), Nine (9), Ten (10), Eleven (11) and Twelve (12), Block Two
(2), and Lot D, SVADLENAK & CORRIS ADDITION, City of Harlingen, Cameron County,
Texas, according to the map or plat thereof recorded in Volume 6, Page 64, Map
Records, Cameron County, Texas;


 Lots One (1), Two (2), Three (3), and Four (4), Block One (1), WOMACK ADDITION,
City of Harlingen, Cameron County, Texas, according ot [sic] the map or plat thereof
recorded in Volume 8, Page 38, Map Records, Cameron County, Texas; and


 Lots One (1), Two (2), Three (3), Block Four (4), LOCKHART ADDITION, City of
Harlingen, Cameron County, Texas according to the map or plat thereof recorded in
Volume 6, Page 71, Map Records, Cameron County, Texas.
3. In a prior lawsuit, Pactiv sued DRC Distributors, Inc., and obtained a money judgment for
nonpayment of an account. See Joiner, 2005 Tex. App. LEXIS 6364, at *2. It is undisputed that the
trial court, in that case, rendered judgment against DRC (f/k/a Joiner Foodservices, Inc.) in the amount
of $213,409.09 plus pre- and post-judgment interest and attorney's fees.
4. Property 2 is described as follows:


 Lot Six (6), Seven (7) and Eight (8), Block Seventy-nine (79), ORIGINAL TOWNSITE OF
THE CITY OF HARLINGEN, Cameron County, Texas, according to the map or plat
thereof recorded in Volume 2, Page 14, Map Records of Cameron County, Texas.
5. We note that this address was the address on file with the Texas Secretary of State for DRC,
at the time the lawsuit was filed, when DRC was served, and when the abstract was recorded.
6. Cameron Life notes, and Pactiv does not dispute, that DRC no longer had a valid Texas address
at this time.